HUMANA INC., Plaintiff,

v.

MEDTRONIC SOFAMOR DANEK
USA, INC., and Medtronic,
Inc., Defendants.

Case No. 2:14–cv–02405–JTF–cgc.

United States District Court,
W.D. Tennessee,
Western Division.

Signed Sept. 25, 2015.

April Ann Wimberg, John Kenneth Bush, Bingham Greenbaum Doll LLP, Louisville, KY, David B. Gray, Goldberg Simpson, Prospect, KY, Ryan L. Woody, Matthiesen Wickert & Lehrer S.C., Hartford, WI, Virgil Brandon McGrath, Bingham Greenebaum Doll, LLP, Cincinnati, OH, for Plaintiff.

Nathan A. Bicks, Charles Silvestri Higgins, Gary Scott Peeples, Jennifer Shorb Hagerman, Burch Porter & Johnson PLLC, Memphis, TN, Lauren S. Colton, Marc A. Marinaccio, Hogan Lovells U.S. LLP, Baltimore, MD, Mitchell E. Zamoff, Hogan & Hartson LLP, Washington, DC, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

JOHN T. FOWLKES, JR., District Judge.

Before the Court comes Defendants' Motion to Dismiss Plaintiff's First Amended Complaint filed December 5, 2015. (ECF No. 33). On January 16, 2015, Plaintiff filed a Response in Opposition, (ECF No. 34), to which Defendants filed a Reply in Support on February 13, 2015, (ECF No. 36). On March 19, 2015, Plaintiff provided this Court with a Notice of Supplemental Authority, (ECF No. 38), to which Defendants responded on March 24, 2015, (ECF No. 39). On May 22, 2015, oral arguments were held before this Court on Defendants' Motion to Dismiss. (ECF No. 45). Defendants filed a Notice of Supplemental Authority on August 17, 2015, (ECF No. 47), to which Plaintiff responded on August 20, 2015, (ECF No. 48). Plaintiff filed another Notice of Supplemental Authority on September 3, 2015, (ECF No. 49) to which Defendant responded on September 14, 2015, (ECF No. 50). After reviewing the Motion, Response, Reply, supplemental authorities, and oral arguments by the parties, the Court GRANTS in PART and DENIES in PART Defendants' Motion to Dismiss.

### I. *FACTUAL BACKGROUND*

The Infuse Bone Graft ("Infuse") is FDA approved for spinal fusion procedures when used in combination with the LT–Cage. (ECF No. 31 at ¶ 12, 29) (approving Premarket Approval status for Anterior Lumbar Interbody Fusion on July 2, 2002). Such is used as an alternative to bone grafting. *Id.* at ¶ 14. As further described in the Important Medical Information ("IMI") for the Infuse,

> [t]he InFUSETM Bone Graft component is inserted into the LT–CAGETM Lumbar Tapered Fusion Device component to form the complete InFUSETM Bone Graft/LT–CAGETM Lumbar Tapered Fusion Device. **These components *must* be used as a system. The InFUSE0 Bone Graft component *must not* be used without the LT–CAGE0 Lumbar Tapered Fusion Device Component.**

(ECF No. 33–2 at p. 2). The IMI further details "Warnings" and "Potential Adverse Effects" for the Infuse. Specifically, the "Warnings" in the IMI state that,

> [t]he safety and effectiveness of the InFUSE Bone Graft component with other spinal implants, implanted at locations other than the lower lumbar spine, or used in surgical techniques other than open anterior or anterior laparoscopic approaches have not been established. When degenerative disc disease was treated by a posterior lumbar interbody fusion procedure with cylindrical threaded cages, posterior bone formation was observed in some instances.

*Id.* at p. 5. Lastly, the IMI outlines the various "Potential Adverse Events" that can occur because of the Infuse, such as bone fracture, cessation of any potential growth of the operated portion of the spine or loss of spinal function, ectopic and/or exuberant bone formation, infection, neurological system compromise, tissue or nerve damage, scar formation, or retrograde ejaculation, and noting that "[a]dditional surgery may be necessary to correct some of these potential adverse events". *Id.* at 10–11.

Beginning in 2002, Plaintiff agreed to reimburse their insureds for off-label use [1] of Infuse, in reliance on medical literature that touted the benefits of and underreported the adverse events of Infuse. (ECF No. 31 at ¶ 145). Defendants edited and controlled such medical literature. *Id. passim.* Specifically, the Defendants have spent "millions of dollars" in fees to ghostwriters and Key Opinion Leaders ("KOLs") related to Infuse. *Id.* at ¶¶ 33, 40, 187. In late 2008, Plaintiff became aware of new medical literature that questioned the safety and efficacy of Infuse in off-label procedures. *Id.* at ¶ 162. In February of 2009, Plaintiff adopted a policy prohibiting the reimbursement of off-label Infuse procedures. *Id.* However, Plaintiff continued to reimburse for such off-label procedures based on representations of Defendants at meetings held on May 25 and October 27, 2010. *Id.* at ¶¶ 165–73. Within such meeting, Defendants cited to what Plaintiff now calls fraudulent medical literature.[2] *Id.* Apparently, Plaintiff mistakenly paid for many disguised off-label procedures. *Id.* at ¶¶ 176–81. Specifically, Plaintiff claims that Defendants provided medical practitioners with medical codes that would mask the use of off-label Infuse procedures. Consequently, reimbursements were made against Plaintiff's policy. *Id.* at ¶¶ 178, 181. Plaintiff identifies twelve claims, paid from May 2008 to April 2012. *Id.* at ¶¶ 188, 266.

Plaintiff states that many of Plaintiff's insureds were implanted with a debased version of the Infuse device by, *inter alia,* substitution of the cage component, implantation at unapproved locations of the spine, or utilization of a posterior approach. *Id.* Humana settled product liabil-ity claims related to Infuse. *Id.* at ¶ 350. As such, Plaintiff claims that it is entitled to reimbursement for certain Medicare benefits. *Id.* at ¶¶ 348, 352–55.

Due to Defendants' alleged fraudulent actions, Plaintiff pursues fourteen causes of action: (1) fraudulent misrepresentation; concealment; omission and fraud in the inducement; (2) violation of 18 U.S.C. § 1962(c) (RICO statute); (3) violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c); (4) negligent misrepresentation; (5) subrogation; (6) violation of the consumer protection statutes of the fifty states, the District of Columbia, and the Commonwealth of Puerto Rico; (7) breach of express warranty; (8) breach of implied warranty; (9) unjust enrichment; (10) conversion; (11) Medicare Secondary Payer claim for declaratory judgment; (12) a private cause of action under the Medicare Secondary Payer claim; (13) right-to-charge action under the Medicare Secondary Payer claim; and (14) accounting. *See generally id.*

In Defendants' Motion to Dismiss, (ECF No. 34), Defendants argue four major contentions for why Plaintiff's First Amended Complaint should be dismissed: (1) Plaintiff fails to allege any injury in fact or causal connection for Count 1–10; (2) Plaintiff fails to state a claim for relief on all counts; (3) Plaintiff fails to allege fraud with particularity for Counts 1–4, 6, 9–10; and (4) Plaintiff is time-barred as to Counts 1–5, 7–10. (ECF No. 33 at p. 1). To the contrary, Plaintiff contends that all claims are timely and sufficiently pled for all purposes. (ECF No. 34).

## II. *LEGAL STANDARD*

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint that "fail[s] to state a

---

1. Off-label use in this context includes using Infuse with another cage or without a cage at all. (ECF No. 31 at ¶ 17).

2. Plaintiff also claims that Defendants knew that medical-literature aggregators would use fraudulent medical literature. (ECF No. 31 at ¶ 155).

claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). This allows the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if *everything alleged* in the complaint is true." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993) (emphasis added) (citing *Nishiyama v. Dickson Cnty.,* 814 F.2d 277, 279 (6th Cir.1987)).

When evaluating a motion to dismiss under Fed. R. 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012) (The court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." (citing *Harbin–Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir.2005))). The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir.2007) (first alteration in original) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). Although the complaint need not contain detailed factual allegations, a plaintiff's "[ ]bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955) ("[T]he tenet that a court must accept as true all of the allega-

tions contained in a complaint is inapplicable to legal conclusions."). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the ... court to draw on its experience and common sense." *Id.* at 663–64, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). When undertaking a motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), the Court may look to "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint'" for guidance. *Barany–Snyder v. Weiner,* 539 F.3d 327, 332 (6th Cir.2008) (quoting *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir.2001)). If the complaint merely pleads facts that are parallel to the defendant's liability, then the complaint "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

## III. *ANALYSIS*

### A. Injury in Fact and General Pleading Issues

▪ As to Counts 1–4, and 6, Defendants' first contention is that Plaintiff cannot sufficiently "allege either an 'injury in fact' or a 'fairly traceable connection between [Plaintiff's] injury and the complained of conduct' of [Defendants]." (ECF No. 33–1 at p. 13). Specifically, Defendant contends that "[r]eimbursing patients and providers for medically necessary and covered procedures cannot, standing alone, constitute an invasion of [Plaintiff's] 'legally protected interest.'" "Such reimbursements are part of the 'conscious bargain' insurance companies make with their insureds, for which they are duly compensated through premium payments." *Id.* (citing *Ironworkers Local Union 68 v. AstraZeneca Pharms., LP,* 634 F.3d 1352, 1365 (11th Cir.2011)).[3]

---

**3.** Defendants also state that "the [Complaint] does not even make specific allegations that

Infuse did not work as intended for any pa-

To the contrary, Plaintiff directly contends that such procedures were not medically necessary,[4] and that such procedures would not have been covered, but for Defendants' fraud. (ECF Nos. 31 at ¶¶ 9, 161; 34 at pp. 13–15, 17). With Plaintiff stating that alternative procedures were cheaper, at least at this point in the case, Plaintiff has established an injury in fact caused by Defendants' fraud/misrepresentations. (ECF No. 31 at ¶ 10). However, to the extent that Plaintiff seeks recovery for payments necessitated by Infuse-related injuries, Plaintiff's Complaint fails to provide sufficient factual allegations to cross the plausibility threshold.[5] Plaintiff pleads that various insureds "may" have needed revision surgery. (ECF No. 31 at ¶ 189). Speculation is not a claim to relief.[6] For similar reasons, the Court must also find that Plaintiff has failed to sufficiently allege an injury in fact as to Plaintiff's claims under the various Consumer Protection Acts. Plaintiff has not provided any connection to tie the various jurisdictions to individual claims. As such, the Court DISMISSES Count six of Plaintiff's Complaint.[7]

■ As to Count 5, relating to Subrogation, Defendants contend that " 'to proceed as subrogees,' insurers 'must identify the

persons to whose claims the insurers are subrogating and show that the insureds are entitled to recover, that the plaintiffs have a contractual right to proceed on each insured's behalf with respect to each claim and that the suits fall within federal jurisdiction.' " (ECF No. 33–1 at pp. 17–18) (citing *Health Care Serv. Corp. v. Brown & Williamson Tobacco Corp.*, 208 F.3d 579, 581 (7th Cir.2000); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 344 F.3d 211, 218 (2d Cir.2003)); *see also U.S. Airways, Inc. v. McCutchen,* —— U.S. ——, 133 S.Ct. 1537, 1546 n. 5, 185 L.Ed.2d 654 (2013) ("Subrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against a third party." (internal quotation marks omitted)). The Complaint does not provide this Court with individual insureds for Plaintiff to step into their shoes, a specific "debt" or "payment to its insured," nor does it properly provide that the suits fall within federal jurisdiction.[8] (ECF Nos. 33–1 at p. 18 & n. 8; 34 at pp. 16–17); *see also Hafer v. Medtronic, Inc.*, 99 F.Supp.3d 844, No. 2:13–cv–02340–JTF–dkv, 2015 WL 1648978, 2015 U.S. Dist. LEXIS 51932 (W.D.Tenn. Apr. 13, 2015) (discussing the

tient insured by [Plaintiff]." (ECF No. 33–1 at p. 14). This raises a point more to the sufficiency of the complaint than to standing. As such, this Court will address such issue *infra*. *See also infra* Notes 5 & 7.

**4.** Absent Defendants' representations, Plaintiff would have utilized either an autograft or allograft procedure, which does not utilize Infuse. *See generally* (ECF No. 31).

**5.** Even with Plaintiff alleging that people were injured by Infuse, Plaintiff fails to provide that any of Plaintiff's insureds were among those injured. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955)); *see also infra* Note 6.

**6.** Such claim is further undercut considering that the Plaintiff has all of the records for its insureds readily available. (ECF No. 33–1 at p. 18); *see also Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 522 (6th Cir.2008).

**7.** Although Count 6 is dismissed for lack of injury of fact, it is more closely related to failure to properly plead under *Twombly* and *Iqbal*. It is simply not enough to state that Plaintiff "cover[s] Members in all fifty States." (ECF No. 31 at ¶ 140). Plaintiff must provide some connection to the injury. *See supra* Note 6.

**8.** *See supra* Note 6.

issue of preemption in the context of Infuse). Any claims of injured insureds are speculative and conclusory at best.[9] As such, the Court DISMISSES Count 5.

 As to Counts 7 and 8, regarding Breach of Express Warranties and Breach of Implied Warranties, the Court must dismiss such claims *sua sponte* for lack of subject matter jurisdiction. *Page v. City of Southfield*, 45 F.3d 128, 134 (6th Cir. 1995) ("The district court should not interfere with an agreed upon forum until the plaintiff, by motion, indicates an objection to the removal procedure or the court determines that subject matter jurisdiction is lacking."). Specifically, any "allegations of a breached warranty of safety and effectiveness directly contradict the FDA's analysis of safety and effectiveness." *Hafer*, 99 F.Supp.3d at 863, 2015 WL 1648978, at *16, 2015 U.S. Dist. LEXIS 51932, at *154–57 (discussing full preemption in this area); *see also* (ECF No. 31 at ¶ 303) ("More specifically, Defendants represented that the [Infuse] was safe and effective to treat conditions of [Plaintiff's] Members."). As such, the Court DISMISSES Counts 7 and 8 as preempted.

 As to Count 9, relating to Unjust Enrichment, Defendants contend "that when the defendant has provided consideration in exchange for the benefit conferred, it is not unjust to retain the benefit." (ECF No. 33–1 at p. 19) (citing *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 597 (Tenn.1998)). Further, Plaintiff " 'must … demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract'—in this case, the providers who actually billed [Plaintiff]." *Id.* at p. 20 (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525–26 (Tenn.2005)). Plaintiff

contends that Defendants' enrichment is unjust based on the "extensive scheme to fraudulently promote" Infuse. (ECF No. 34 at p. 19). For the reasons found in supra Part III.B., Plaintiff has not properly pled fraud for this Court to find unjust enrichment. Further, Plaintiff does not dispute that, in many of the procedures, proper consideration and benefits were conferred to Plaintiff thereby making unjust enrichment inapplicable.[10] As such, this Court must DISMISS Count 9.

 As to Count 10, relating to Conversion, Defendants contend that conversion is not proper for money "unless it is 'specific and capable of identification or where there is a determinate sum that the defendant was entrusted to apply to a certain purpose.' " (ECF No. 33–1 at p. 20) (quoting *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553 (Tenn.Ct.App.2012) ("[W]henever the plaintiff's money has come into the defendant's possession and has been converted without the plaintiff's express or implied assent that the relation of debtor and creditor should arise.")). Plaintiff argues that "[m]oney may be subject to a claim for conversion where the money is specific and capable of identification." (ECF No. 34 at p. 19) (citing *PNC Multifamily*, 387 S.W.3d at 553). With money being generally fungible, the Court finds that Plaintiff has not pled specific, identifiable funds. Moreover, with Plaintiff's claims sounding in fraud, Plaintiff must plead with particularity "wrongful possession of [the money] has been obtained by the defendant." *PNC Multifamily*, 387 S.W.3d at 553; *see supra* Part III.B (finding that Plaintiff has not sufficiently pled fraud). As such, this Court must DISMISS Count 10.

---

9. *See supra* Note 6.

10. Similar to Plaintiff's other claims, Plaintiff has not pled any individual claims for which unjust enrichment would apply.

## B. Pleading Fraud with Particularity

■■■ Plaintiff pleads two theories of fraud. First, Plaintiff alleges that pre–2009 Plaintiff made payments for off-label use of Infuse in reliance on medical articles that were edited and controlled by Defendants. (ECF No. 31 at ¶¶ 52–139). Second, Plaintiff alleges that post–2009 Plaintiff continued to pay for off-label use of Infuse due to fraudulent billing codes initiated by the Defendants. *Id.* at ¶¶ 179, 181, 187–88, 266. Such theories are the basis for four separate claims: (1) fraudulent misrepresentation; concealment; omission and fraud in the inducement; (2) violation of 18 U.S.C. § 1962(c) (RICO statute); (3) violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c); and (4) negligent misrepresentation. "Rule 9(b) requires that a plaintiff allege[ ] the time, place, and content of the alleged misrepresentation on which he or she relied...." *See Sanderson v. HCA–The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir.2006). As noted by Plaintiff, "a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " (ECF No. 34 at p. 30) (quoting *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012)).

■■■ As to Plaintiff's first theory regarding pre–2009 fraud,[11] Defendants contend Plaintiff fails to allege with particularity either fraud or reliance on such fraud. (ECF No. 33–1 at pp. 31–34). Primarily, the only specific statement offered by Plaintiff is that there were no "unanticipated device-related adverse events." *Id.* at p. 31 (citing (ECF No. 31 at ¶¶ 60, 62)). Plaintiff has not provided—other than in a conclusory fashion—how such statements are false. *Id.* at p. 32 ("[T]hese are nothing more than 'naked assertion,' which are 'not entitled to [the assumption] of truth ....' " (quoting *Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937)). To support Plaintiff's claim, Plaintiff provides "the fraudulent literature with specificity." (ECF No. 34 at p. 31); *see also* (ECF No. 31 at ¶¶ 52–139).

■■■ Upon the Court's review of Plaintiff's Complaint, the Plaintiff provides various specific statements centered on there being "no unanticipated device-related adverse events."[12] (ECF No. 31 at

---

11. The Court finds that any claim regarding tainting literature post–2009 is not pled sufficiently to show reasonable reliance. Specifically, the Court finds that the change in Plaintiff's reimbursement policy in 2009 shows that any reliance from that point would clearly be unreasonable in the eyes of Plaintiff. *See* (ECF No. 33–9); *see also* (ECF No. 31 at ¶¶ 163–64) ("[Plaintiff] adopted its BMP Policy ... [when it] concluded, based upon the balance of the literature ... exposing the dangers and inefficacy of highly expensive, off-label [Infuse] uses...."; "BMP Policy has been reviewed ... on an annual basis since 2009 and has never been changed....").

 Plaintiff's claim of fraudulent concealment does not alleviate such concerns. Specifically, Plaintiff claims that Defendants further manipulated Plaintiff at meetings held in May and October of 2010. However, Plaintiff fails to provide particularity for fraudulent concealment as required under Fed.R.Civ.P. 9(b). Plaintiff fails to provide any specific statement made outside of the pre–2009 articles, those same articles which are the basis for Plaintiff's pre–2009 fraud theory. *See Allied Sound, Inc. v. Neely*, 58 S.W.3d 119, 123 (Tenn.Ct.App.2001) (reliance is not reasonable as a matter of law where plaintiff is on inquiry notice of the alleged fraud); *infra* Note 13.

12. The Court does not consider Plaintiff's Complaint to the extent that "fact[s] [were] not reported in the article[s]." (ECF No. 31 at ¶ 60). Specifically, "fraud by omission ... is expressly preempted under the FDCA." *Perez v. Nidek Co.*, 711 F.3d 1109, 1118–19 (9th Cir.2013); *see also supra* Part III.A. (discussing subject matter jurisdiction). Nor can the Court consider Plaintiff's Complaint to the extent that it seeks to punish Defendants for a

¶¶ 52–139). However, the Court finds that Plaintiff has failed to allege with particularity how such statements were false within the purview of each particular article. *See generally id.* (stating as briefly and as conclusory as "[t]his statement was false"); *see also Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 ("[C]onclusory statements, do not suffice." (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")); *Heinrich,* 668 F.3d at 404 ("[A] plaintiff must . . . 'explain why the statements were fraudulent.'"). "Because claims based on fraud pose a high risk of abusive litigation," Plaintiff must provide more than notice;

Plaintiff "must state with particularity the circumstances constituting the fraud or mistake." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.,* 683 F.3d 239, 247 (6th Cir.2012). The Court does not find sufficient explanation for why such statements were fraudulent. As such, the Court must DISMISS Counts 1–4 to the extent that such relies on Plaintiff's tainted literature theory.[13]

■■■■■ As to Plaintiff's second theory regarding post–2009 fraud, Defendants contend Plaintiff "fails to plausibly allege any fraudulent scheme or intent." (ECF No. 33–1 at p. 30). Specifically, Plaintiff "pleads 'upon information and belief.'" *Id.* (citing (ECF No. 31 at ¶ 181)).

---

failure to warn. *See Hafer,* 99 F.Supp.3d at 859–64, 2015 WL 1648978, at *12–17, 2015 U.S. Dist. LEXIS 51932, at *147–59 (discussing fully preemption in this area).

**13.** In the alternative, this Court would dismiss Plaintiff's pre–2009 fraud/RICO claims as untimely. Specifically, this Court finds that Plaintiff had inquiry notice no later than February 2009. *See Redwing v. Catholic Bishop for Dioc. of Memphis,* 363 S.W.3d 436, 459 (Tenn.2012) ("Once a plaintiff gains information sufficient to alert a reasonable person of the need to investigate the injury, the limitations period begins to run." (internal quotation marks omitted)); *Isaak v. Trumbull S & L Co.,* 169 F.3d 390, 399 (6th Cir.1999) ("The plaintiff need only possess a low level of awareness. . . . "[T]he clock begins to tick when a plaintiff senses 'storm warnings,' not when he hears thunder and sees lightning." (internal quotation marks omitted)"). Although a financial relationship does not equal fraud, reports of such would at least lead to an inquiry. *See* (ECF No. 31 at ¶ 48) ("Defendants and their agents withheld the fact that Defendants paid the KOLs huge sums of money based on the sales of Defendants' products."); (ECF No. 33–3 at p. 3) (reporting on September 4, 2008 that "[d]octors with financial relationships with Medtronic have written favorably about off-label uses of Infuse on Web sites, in medical journals and at educational meetings. "Some of the most influential spine surgeons in the country are consultants to the company. "Several of them

benefit from sales of the product through royalty deals . . . ."); *see also Koch v. Christie's Int'l PLC,* 699 F.3d 141, 153 (2d Cir.2012) (finding "numerous articles" sufficient "storm warnings"). "The rule in this Circuit is that 'where events receive . . . widespread publicity, plaintiffs may be charged with knowledge of their occurrence . . . .' even when she claims that 'she did not hear or read any of the media reports.'" *Ball v. Union Carbide Corp.,* 385 F.3d 713, 722 (6th Cir.2004) (applying Tennessee law) (quoting *Hughes v. Vanderbilt Univ.,* 215 F.3d 543, 548 (6th Cir.2000)); *Redwing,* 363 S.W.3d at 459 (finding unnecessary to know "all the facts that affect the merits of his or her claim"). As such, with Plaintiff's Complaint filed more than five years after, Counts 1–4 are untimely. *See* Tenn.Code Ann. § 28–3–105 (listing 3 years as the limitation period for fraud claims); *Rotella v. Wood,* 528 U.S. 549, 552, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000) (finding "a four-year limitations period for civil RICO claims" (citing *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987))); *Koch,* 699 F.3d at 153 ("The existence of 'storm warnings' sufficient to trigger inquiry notice does not begin the clock when the plaintiff *actually pursues* an investigation." (emphasis added)); *see also supra* Note 11.

The Court finds it unnecessary to consider whether Plaintiff's other claims are timely.

" 'While fraud may be pled on information and belief when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, the plaintiff must still set forth the factual basis for his belief." *Id.* (quoting *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 501 F.3d 493, 512 (6th Cir.2007)); *Sanderson v. HCA–The Healthcare Co.,* 447 F.3d 873, 878 (6th Cir.2006) (stating that pleadings on information and belief "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations"). In support, Plaintiff provides "the billing codes Medtronic taught providers . . . ; the Reimbursement Guide published by Medtronic . . . ; and specific claims for [Infuse] sent to [Plaintiff]." (ECF No. 34 at p. 31).

Each "source of fraud" fails to meet Fed.R.Civ.P. 9(b)'s standard for particularity. Although Plaintiff contends that Defendants provided "billing codes" and a "Reimbursement Guide," Plaintiff fails to "identify the speaker" with particularity. *See Heinrich,* 668 F.3d at 404. Specifically, the Plaintiff never connects Defendants to a specific fraudulent billing code.[14] Plaintiff's only allegation of a connection involves only conclusory allegations of seminars held by the Defendants. *See* (ECF No. 31 at ¶¶ 40, 42, 143, 180, 257,

262, 264). Plaintiff does not allege a time or location for such seminars, nor does Plaintiff allege any particular communications stemming from such seminars. *Id.;* *see also* (ECF No. 45 at p. 77) (stating "we weren't privy to those conversations"). Any allegations stemming from such seminars are speculative and conclusory without providing any form of particularity as required under Fed.R.Civ.P. 9(b) or plausibility under Fed.R.Civ.P. 8. *See Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement of relief.' " (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955)). As such, the Court must DISMISS Counts 1–4 to the extent that such relies on Plaintiff's fraudulent billing theory.[15]

## C. Medicare Claims

On May 6, 2014, Defendants settled multiple Infuse-related claims with at least one of Plaintiff's members.[16] (ECF No. 33–1 at p. 36) (citing (ECF No. 31 at ¶ 350)). Plaintiff does not provide this Court with facts as to specific settlements. However, Plaintiff alleges that Defendants

---

**14.** To the extent that Defendants are connected to their Reimbursement Guide, Plaintiff never provides this Court with any statement from the Reimbursement Guide which could be construed as insinuating the use of fraudulent codes. *See generally* (ECF No. 45 at p. 19) (stating that "the codes are submitted by doctors or hospitals"). Plaintiff's Complaint merely refers to the guide without providing any substance. (ECF No. 31 at ¶ 179). As such, the Court finds that Plaintiff's "twelve examples of electronically submitted claims" have no connection with Defendants as currently pled as such only states that they "are examples of unapproved procedures paid for by [Plaintiff]." *See* (ECF Nos. 34 at p. 31; 31 at ¶ 188); *see also* (ECF No. 45) (providing no connection from the billing codes to the seminars held); (ECF No. 31 at ¶¶ 40, 42, 143,

180, 257, 262, 264 (alleging no time or location for any of Defendants' "wrongful" seminars)).

**15.** The Court finds it unnecessary to consider whether reliance is a part of Plaintiff's RICO claim. *See* (ECF Nos. 34 at pp. 30–32; 36 at p. 12). As noted above, the Court finds particularity lacking within the other elements of a fraud claim.

**16.** Although outside of the 60–day payment window, Plaintiff alleges that payment has not been received. (ECF No. 31 at ¶¶ 341–55). Further, although Defendants state that such settlement agreements provide for the disbursement of funds to all third-party lien holders, neither the Court nor Plaintiff has a copy of any settlement agreements.

never provided information as to whom they settled with. As such, Counts 11–14 of Plaintiff's Complaint seek discovery and recovery of payments made by Plaintiff to members who have settled. (ECF No. 31 at ¶¶ 326–75).

 Primarily, as to Count 12, Defendants contend that Plaintiff as an MAO lacks a private right of action to bring its Medicare Secondary Payor Claim. (ECF No. 33–1 at p. 36). Specifically, Defendants contend that such would be inconsistent with *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146 (9th Cir.2013); *Caldera v. Ins. Co. of Pa.*, 716 F.3d 861 (5th Cir. 2013); and *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387 (2d Cir.2001). Plaintiff cites to the Court of Appeals for the Third Circuit opinion of *In re Avandia Mktg.*, 685 F.3d 353 (3d Cir.2012); and an East Tennessee District Court opinion, *Cariten Health Plan, Inc. v. Mid–Century Ins. Co., 3:14–cv–00476–TAV*, E.D.Tenn., September 1, 2015, as well as federal regulations as support of its private cause of action. (ECF No. 34 at pp. 38–40; and ECF No. 49); *see also Mich. Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.*, 758 F.3d 787 (6th Cir.2014) (allowing a private cause of action for non-group health plans). The Court has not found a sixth circuit appellate opinion directly on point. Although the *Avandia* decision is not controlling, in light of *Cariten*, the current record and federal regulations, the Court finds *Avandia* persuasive. As such, the Court DENIES Defendants' Motion as to Count 12.[17] The Court must

also DENY Defendants' Motion as to Count 11 for a Declaratory Judgment.

Next, as to Count 13, relating to Plaintiff's Right–to–Charge action, Defendants contend that dismissal is required based on *Care Choices HMO v. Engstrom*, 330 F.3d 786 (6th Cir.2003), interpretation of "virtually identical language in a parallel provision." (ECF No. 33–1 at p. 41). However, Plaintiff contends that *Care Choices* does not apply for two reasons.[18] (ECF No. 34 at pp. 42–43). First, *Care Choices* analyzed 42 U.S.C. § 1395mm(e)(4), which does not include a reference to the Medicare Secondary Payor private cause of action, 42 U.S.C. § 1395y(b)(2), like Section 1395w–22(a)(4). *Id.* at p. 42; *see also Care Choices*, 330 F.3d at 790 (finding "a fairly clear indication that Congress intended the Medicare program to have more extensive rights than Medicare-substitute HMOs"). Second, 42 C.F.R. § 422.108 provides for billing the primary plan. (ECF No. 34 at p. 42–43). Based on the filings of the parties, the Court agrees with Plaintiff's interpretation. As such, the Court DENIES Defendants' Motion as to Count 13.

 Lastly, as to Count 14, Defendants contend that the Accounting claim is antiquated and unnecessary in light of the modern-day discovery process. (ECF No. 33–1 at pp. 41–42) (citing *Digital 2000, Inc. v. Bear Commc'ns, Inc.*, 130 Fed.Appx. 12, 23 (6th Cir.2005) (noting that "[i]n light of the broad discovery available to litigants [in federal court], account actions are of

---

17. Unlike the rest of Plaintiff's Complaint, all settlement information is outside the control of Plaintiff. *See e.g.*, (ECF No. 45 at p. 63) (stating "we certainly don't have those" in reference to the settlement agreements). Notwithstanding the Defendants claims of speculation or failure to plead the payments for those settled, the Court must allow the case to proceed to discovery on this issue.

18. Plaintiff notes that there is not an " 'insurance agreement' between MAOs and Medicare enrollees." (ECF No. 34 at p. 42 n. 27); *see also* (ECF No. 45 at p. 62). *Care Choices'* "conclusion [w]as bolstered by the fact that Care Choices HMO has this widely recognized alternative [—inclusion of provisions within their insurance policies—as an] avenue for enforcement." *Care Choices*, 330 F.3d at 790.

dubious utility")). Plaintiff has not cited modern authority or provided detail as to any possible complexities that may require an accounting. As such, the Court DISMISSES Count 14 of Plaintiff's Complaint.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS in PART and DENIES in PART Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. Therefore, Counts 1–10 and 14 are DISMISSED.